UNITED STATES v. KING et al.

(District Court, D. Massachusetts. April 25, 1916.)

No. 1047.

1. MONOPOLIES ⬤⟳31—INDICTMENT—CLAYTON ACT—EXCEPTIONS.

An indictment, alleging that defendants, as members of an association made up of persons and concerns engaged in shipping certain potatoes, entered into a conspiracy in restraint of trade, which did not allege that the association was composed of persons raising the potatoes or that any member was an actual producer, and further failed to allege whether the association had a capital stock or was conducted for profit, is not subject to demurrer as showing that the association fell within the Clayton Act Oct. 15, 1914, c. 323, § 6, 38 Stat. 731 (Comp. St. 1916, § 8835f), declaring that nothing contained in the anti-trust laws shall be construed to forbid the existence and operation of labor, agricultural, or horticultural organizations, instituted for the purpose of mutual help and not having capital stock or conducted for profit or to forbid or restrain individual members of such organizations from lawfully carrying out the legitimate objects thereof.

2. MONOPOLIES ⬤⟳17(2)—BOYCOTT—CLAYTON ACT. ·

While the Clayton Act declares that nothing contained in the anti-trust law shall be construed to forbid the existence and operation of labor, agricultural, or horticultural organizations instituted for mutual help, etc., such organizations are not privileged to adopt methods of carrying on their business which are not permitted to other lawful associations, and a secondary boycott, whereby an association sought to prevent others from trading with one blacklisted by it, is unlawful.

3. MONOPOLIES ⬤⟳12(1)—COMBINATIONS IN RESTRAINT OF TRADE—DEFENSE.

It is no defense to a prosecution for conspiracy in restraint of trade, entered into by members of an association of shippers of certain potatoes, that there might be other shippers of such potatoes who would not be affected by the association's regulations, for in a prosecution under the anti-trust laws the court must take the business situation as it is found.

4. MONOPOLIES ⬤⟳31—COMBINATIONS IN RESTRAINT OF TRADE—INTERSTATE TRADE—INDICTMENT.

Where the indictment alleges that there was an interstate trade in certain potatoes, of which defendant association controlled 75 per cent., and the illegal and coercive action of the association would affect receivers wherever located, the indictment, charging conspiracy in restraint of such trade in violation of the federal anti-trust laws, is not subject to attack on the ground that it did not disclose any restraint of interstate trade.

At Law. Carl C. King and others were indicted for combination or conspiracy in restraint of trade. On demurrer to the indictment. Demurrer overruled.

See, also, 229 Fed. 275.

Herbert Parker, of Boston, Mass., for defendants.

MORTON, District Judge. This indictment relates to the same alleged combination or conspiracy in restraint of trade on which the previous indictment in this court against the same defendants was based. Much of what was said in the opinion on the demurrer in that case applies here and need not be restated.

⬤⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The present indictment describes more fully than the former one the membership and objects of the Aroostook Potato Shippers' Association, the reasons for blacklisting by that association, and the persons affected by the blacklist. The reasons for blacklisting as now alleged are, broadly speaking, unreasonable failure to pay to members money lawfully due, unreasonable refusal to accept and pay for potatoes duly shipped, and deductions from agreed prices claimed by receivers upon improper grounds; and the decision whether the facts in any given transaction warrant blacklisting is made by the listing committee of the association without notice, and without hearing the receiver thereby affected. A receiver of Aroostook potatoes whose action under contracts between himself and members of the association is disapproved by the listing committee may be blacklisted by it. Once blacklisted, nobody in the association can deal with him in Aroostook county potatoes under penalty of possible blacklisting, and of fines rapidly increasing in severity for successive dealings; and nobody outside the association can deal with him, in such potatoes, without also being subject to blacklisting. In these respects the present indictment is somewhat stronger in its allegations than the previous one which was held good on demurrer.

It is now contended by the defendants that their association is an agricultural organization within the Clayton Act, and that they are not therefore subject to prosecution, even assuming that otherwise they would be. That act provides as follows:

"That the labor of a human being is not a commodity or article of commerce. Nothing contained in the anti-trust laws shall be construed to forbid the existence and operation of labor, agricultural, or horticultural organizations, instituted for the purposes of mutual help, and not having capital stock or conducted for profit, or to forbid or restrain individual members of such organizations from lawfully carrying out the legitimate objects thereof; nor shall such organizations, or the members thereof, be held or construed to be illegal combinations or conspiracies in restraint of trade, under the anti-trust laws." Act Oct. 15, 1914, c. 323, § 6, 38 Stat. 731 (Comp. St. 1916, § 8835f).

The defendants' contention is that the Aroostook Potato Shippers' Association (a) was an agricultural organization, (b) that it was instituted for the purpose of mutual help, (c) that it had no capital stock and was not conducted for profit, (d) that in doing the acts here complained of it was lawfully carrying out its legitimate objects, and (e) that all these facts appear from the indictment.

[1] The indictment alleges that "said association * * * was made up of persons and concerns engaged in shipping" certain potatoes commonly called Aroostook county potatoes. It does not allege that the association was composed of persons raising such potatoes, nor that a single member of it was an actual producer of them. The basis on which the organization is founded is that its members shall be "shippers" of Aroostook county potatoes. They may be farmers, commission merchants, or independent dealers. Nor does it appear whether the association has capital stock, nor whether it is conducted for profit. Its business and activities are not completely set forth in the indictment. These considerations would be enough to require

me to hold that the organization is not shown, upon the allegations of the indictment, to be within the Clayton Act.

[2] Even if it were so, I do not think that the coercion of outsiders by a secondary boycott, which was discussed in my opinion on the former indictment, can be held to be a lawful carrying out of the legitimate objects of such an association. That act means, as I understand it, that organizations such as it describes are not to be dissolved and broken up as illegal, nor held to be combinations or conspiracies in restraint of trade; but they are not privileged to adopt methods of carrying on their business which are not permitted to other lawful associations.

[3] It is contended by the defendants that there might be other shippers of such potatoes who would not be affected by the association's regulations, and that it would always be open to outsiders to go into the business of shipping Aroostook potatoes. But we must take a business situation as we find it. It is not an answer to a charge that a combination of manufacturers, for instance, violates the anti-trust law, to say that the field is open to other persons to go into the same business. Otherwise it is hard to see what combination, except one controlling natural resources, could ever be adjudged illegal; and the Sherman Act has not been so limited. Hood Rubber Co. v. U. S. Rubber Co. (D. C.) 229 Fed. 583, District Court Massachusetts, January 11, 1916.

[4] It is also contended for the defendants that no criminal restraint of interstate trade is shown, and no crime cognizable by the United States courts. The indictment, however, clearly alleges that there was this interstate trade in Aroostook county potatoes between certain shippers at points in Maine, and receivers in other states. The members of the association shipped 75 per cent. of such potatoes. Its arbitrary, and as I think illegal, action affects and coerces all receivers wherever located, and, upon the decisions referred to in my opinion on the former indictment, constituted a restraint of interstate trade.

Various other grounds of demurrer are assigned and have been considered. None of them seems to me well grounded nor to require comment.

Demurrer overruled.